Maloney v. Hawkins.

JAMES S. MALONEY v. D. S. HAWKINS et al.

WILL. *Construction.* *Power.* After providing for the payment of debts, etc., testator directs that his widow "shall control my real and personal property to the best advantage to raise and educate our children and to use what may be necessary for that purpose;" also, "that my children shall be made equal in the division of my estate, real and personal;" also, "that my children should all receive about the same in the way of education, and as they arrive at age that they be assisted out of my estate what she may think necessary, but not go beyond what would be their part," with special authority to the widow to convey certain tracts of land: *Held,* 1. That the title to lands did not pass to all the children, as tenants in common by inheritance, but passed to them by devise; and 2. The widow, as executrix, had power to convey the entire estate in any tract, under the restrictions imposed in the will.

FROM GREENE.

Appeal from the Chancery Court at Greeneville. H. C. SMITH, Ch.

ROBINSON & MALONEY and H. H. INGERSOLLL for complainant.

ROBERT M. McKEE for defendants.

McFARLAND, J., delivered the opinion of the court

The complainant by his bill claims to be the creditor of the defendants, D. S. & John K. Hawkins, in the amount of six promissory notes, executed by them as partners, and all due at one day, all of which are exhibited with the bill.

The specific object of the bill is to subject the undivided interests or shares of the said D. S. & John K. Hawkins in the lands of their deceased father, Dr. Joseph Hawkins, and also their interest in a tract purchased by his executrix after his death, under the power to do so given by the will. The several tracts are specially mentioned and described, and the position is assumed that as to these lands Dr. Hawkins died intestate. It is stated, however, that the executrix had conveyed two of the tracts to said John K. Hawkins, and he in turn had conveyed one of the tracts to Ezekiel Adams and the other to S. C. Ayres; that the first was really a sale by the executrix to said Adams, but the mode of conveyance referred to was adopted to avoid the terms of the will. It is charged that the executrix had no power under the will to make these conveyances, and that Adams and Ayres had notice of the terms of the will.

The bill further charges, upon information and belief, that said D. S. & John K. Hawkins have receipted the executrix for large sums and thus attempting to show that they received their *pro rata* of their father's estate, and he insists that this is a part of the scheme to defraud complainant out of his debt. The executrix, who was the widow, and also the other four children of the testator, and Adams and Ayres, together with D. S. & John K. Hawkins, were made defendants. The specific prayer is, that the undivided shares of said D. S. & John K. Hawkins in the lands be subjected to complainant's debts, and that the deeds re-

ferred to be removed as clouds upon the title.    No attachment was prayed for or issued.

The executrix and the other children answered and made defense, but the other defendants suffered judgments *pro confesso.*

The decree of the chancellor granted the relief prayed for, except that he held that the deeds of John K. Hawkins to Adams and Ayres vested each of these purchasers with the undivided one-sixth of the said John K. in said tracts respectively, but he held that said John K. still remained the owner of an undivided one-sixth of all the other lands, and the said D. S. is still the owner of one-sixth in all the lands, all of which are ordered to be sold, if necessary, to pay complainant's debt.    The executrix and in behalf of herself and as guardian *ad litem* for the three infants, have appealed, and D. S. & John K. Hawkins have sued out a writ of error.

If the decree was so far final as to allow a writ of error—as it probably was not—still we think it clear that the question made in behalf of said D. S. & John K. as to the debts or notes sued upon not being due at the filing of the bill, is not well taken. The notes are all exhibited with the bill, and all upon their faces read " one day after date we promise to pay," etc., which from their date would make them all due before the bill was filed, but they all have on the lower left hand corners and opposite the signature words in this form, "due January 1st, 1881," "'due January 1st, 1882," etc., and according to these memoranda, there was only one of the notes due when the

bill was filed; but the makers of the notes allowed judgment *pro confesso* to be taken, and did not make the question by answer or otherwise, as they might have done, whether these memoranda constituted part of the notes, as according to the allegations of the bill they did not: *Hatfield* v. *Griffith*, 1 Lea, 300. The other defendants did make the question in their answer, but it is a question in which they have no interest. If the decree below only had the effect to subject the individual interests of the two debtors in the lands mentioned to complainant's debt, without any adjudication binding upon the heirs or devisees as to the extent of those interests, it might be said that the other heirs and devisees would not be affected by the decree; but the decree adjudges that said debtors each own one-sixth of all the lands, except as to the two tracts as to which John K. has conveyed his interest. The decree does, therefore, affect the rights of the other heirs and devisees, and the correctness of the decree on this point must, therefore, be examined, and the determination of the question depends upon a construction of Dr. Hawkins' will.

It is to be inferred that at the date of the will and at the death of the testator, which occurred soon after, his children were all under age. The 1st and 2d items provide for the payment of the funeral expenses and debts. The 3d item is as follows: "3d. That after my debts are paid, my beloved wife Martha, so long as she shall remain my widow, shall control my real and personal property to the best advantage to raise and educate our children, and to use

what may be necessary for that purpose." The 4th item provides, that the money he may be entitled to, arising out of a partnership with his two brothers, his interest in the lands of his deceased father, and in the lands of a deceased brother, and his interest in another tract specifically mentioned, purchased jointly by him and his two brothers, "be invested in good lands for my children." In connection with this, the 10th item provides that if the other parties owning a joint interest in the lands of his deceased father and his deceased brother, that is to say, the other heirs, think it best to make a private sale, and if his two brothers think it best to sell the other tract mentioned in the 4th item, then his executrix is empowered to join in all these sales and convey accordingly. The 5th item is as follows: "5th. It is my will that my children should be made equal in the division of my estate, both of the real and personal."

The 6th directs his lands to be so farmed as to improve them. The 7th is as follows: "7th. It is my will that my children should all receive about the same in the way of education, and that as they arrive at the age of twenty-one years that they may be assisted out of my estate what *she* may think necessary, but not go beyond what would be their part."

The 8th directs that the surplus stock or grain on hand the next fall be sold, and if not necessary for carrying on the farm, the proceeds to assist in making the last payment for a certain farm.

The 9th appoints his widow his executrix "to carry out my will," but provides in the case of her death

or marriage, that his two sons, D. S. and John K., if twenty-one years of age, together with his brother William, shall be executors. This is, in substance, the whole of the will.

The answer of the executrix, filed in behalf of herself and the other children, sets up that under the powers given her in the will, and especially under the 7th item, she did assist the said John K. and Dudley S., upon their arriving at age, by advancing to them sums which they acknowledge to be their full share of the estate. Dudley S. received his share, $1,700, on or before the 10th of January, 1877, which it is to be inferred was money or personal property; and by the 28th of December, 1876, said John K. had received his share, which included the two pieces of land conveyed to him shortly before. All this occurred before complainant's debts were created. Said parties acknowledged in writing at the time, the receipts to be in full of their share of the estate, and after this bill was filed, executed a formal relinquishment. The answer denies all fraudulent purpose in these transactions.

1st. We are of opinion that the testator did not die intestate as to any part of his estate. The presumption of law is that his purpose was to dispose of his whole estate, and the will may be so construed as to carry out this purpose. Whatever interest, therefore, Dudley S. and John K. took in the estate, was under the will and not as heirs.

2d. The testator intended that his whole estate should be kept together and managed by his executrix

at least until the oldest child should arrive at the age of twenty-one—and as each child should arrive at age, the executrix was empowered to give or advance them out of the estate whatever she might think necessary, provided it did not exceed their part of the whole estate. This is in substance almost the language of item 7. It is true that the executrix is not in terms authorized, in carrying out this item, to convey them any part of the real estate. But there is no limit or restriction as to the part or character of the estate out of which they are thus to be advanced or assisted as they arrive at age. The language is, "they may be assisted out of my estate," etc., and there is no reason to suppose that the testator meant simply that they might receive their share of the personal estate.

It is clear that under this clause the executrix might advance to the oldest child when he arrived at age, his full share of the whole estate, and to each of the others in succession—and this would in the end complete the division of the estate. It is further clear this could not be done without in some way disposing of the realty.

The record indicates that the executrix was able to advance one of the sons, on his arriving at age, his share in money or personalty, but being unable to advance the other in personalty when he became of age and called for his share, she conveyed him part of the real estate. While the 5th item provides that all the children shall be made equal, no other mode of division is indicated than that pointed out in the 7th item. The executrix is by this item given the

power to advance each one of the children his full share, and this, if done, would result in a complete and equal division, and for the executrix to do this she must necessarily have the power to convey the real estate to the children. The power to do a particular thing includes the means by which it is to be accomplished.

But if it were even doubtful whether the executrix has the power to convey the real estate to the children, she undoubtedly has the power to advance them out of the personalty to the full extent of their interest in the estate, so long as she had the means to do so, and consequently the one so advanced would not be entitled to a full share of the real estate.

In short, we hold that each one of the children under the will is entitled to an equal share of the estate as a whole, and is to be charged with such parts of the estate as the executrix may have advanced them, whether of real or personal estate, under the provisions of the 7th clause, and the chancellor was, therefore, in error in holding that John K. and Dudley S. were specifically entitled to one-sixth of the lands. If the complainant had so framed his bill as to ascertain and appropriate the shares of his debtors in the estate, that relief might have been granted, provided they had not already received it, or provided he had shown that the allotment to them of their shares was fraudulent. This he has not done. The relief prayed is that said debtors be declared entitled absolutely and specifically each to an undivided one-sixth in the lands left by the testator, and that the

same be sold for complainant's debt, and this relief, with the modification before indicated, was granted. This we hold was error, and upon the record as presented the only relief to which complainant has shown himself entitled is a judgment against the debtors, with an award of execution, and the decree will be accordingly.

One-half of the costs of this and the court below will be adjudged against D. S. and John K. Hawkins, and the other against complainant.